UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM VILLARROEL, et al.,

                 Plaintiffs,

      v.

RECOLOGY INC., et al.,

                 Defendants.

Case No. 24-cv-03266-HSG

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS,
DEFENDANTS' REQUEST FOR
JUDICIAL NOTICE, AND
PLAINTIFFS' REQUEST FOR
JUDICIAL NOTICE**

Re: Dkt. No. 9, 10, 18-2

       Pending before the Court are Defendants Recology, Inc., Recology San Francisco, Sunset Scavenger Company, and Golden Gate Disposal & Recycling Company's (collectively, "Defendants") motion to dismiss Plaintiffs' third amended complaint ("TAC"), Dkt. No. 9 ("Mot."), Defendants' request for judicial notice, Dkt. No. 10, and Plaintiffs' request for judicial notice, Dkt. No. 18-2. The Court finds the matters appropriate for disposition without oral argument and takes the matters under submission. *See* Civil L.R. 7-1(b). For the following reasons, the Court **GRANTS** Defendants' motion to dismiss, Defendants' request for judicial notice, and Plaintiffs' request for judicial notice.

## I.    BACKGROUND

       Plaintiffs' claims arise from Recology's alleged bribery of Mohammed Nuru—the former Director of the San Francisco Department of Public Works—to "obtain improper garbage collection rate increases from the City and County of San Francisco." Dkt. No. 1, Ex. Z ("TAC") ¶ 1.

       On November 28, 2020, Paul Giusti—a former Recology executive—was criminally indicted by the United States Attorney's Office after a joint FBI and IRS taskforce "determined [] there [was] probable cause to believe that Giusti bribed Mohammed Nuru . . . ." *Id*. ¶ 29. On July

1   28, 2021, Mr. Giusti pled guilty to conspiracy to bribe a local official and commit honest services

2   fraud. *Id.* ¶ 122.

3          On March 4, 2021, the City Attorney of San Francisco sued Recology for alleged

4   violations of the City of San Francisco's (the "City") campaign and governmental conduct code

5   and California's Unfair Competition Law (UCL). Mot. at 12. The case settled, and Recology

6   agreed to "make restitution . . . to [r]atepayers for the full amount of the difference between the

7   rate increases . . . that took effect July 1, 2017, and subsequent rate increases through March 31,

8   2021," totaling approximately $95 million. Dkt. No. 9-3 at 13.[1]

9          Plaintiffs now bring this class action alleging that Defendants "engag[ed] in unlawful,

10  unfair and fraudulent business acts or practices to obtain improper garbage collection rate

11  increases from the City and County of San Francisco [] and conceal[ed] [their] unfair business

12  practices from ratepayers—namely, residential tenants and property owners . . . ." *Id.* ¶ 1.

13         On February 2, 2021, Plaintiffs William Villarroel, Liese L. Sand, and Robert F. Sand

14  (collectively, "Plaintiffs") filed this case in San Francisco Superior Court (Case No. CFC-21-

15  589528) bringing a single claim against Defendants for an alleged violation of California's UCL.

16  Dkt. No. 1 (Notice of Removal ("NOR")) at 2. On May 20, 2021, Plaintiffs filed an amended

17  complaint ("FAC"), accusing Defendants of (1) violating California's UCL, (2) intentional

18  misrepresentation, (3) negligent misrepresentation, (4) fraudulent concealment, (5) intentional

19  indirect misrepresentation, (6) breach of contract, (7) breach of the covenant of good faith and fair

20  dealing, and (8) violating the Consumer Legal Remedies Act (CLRA). *Id.* at 51 (Ex. J, First

21  Amended Complaint). On December 6, 2021, the Superior Court overruled in part and sustained

22  in part Defendants' demurrers to the amended complaint. *Id.* at 105 (Ex. P, 12-06-2021 Order on

23  Demurrer). With respect to Plaintiffs' CLRA, UCL, and fraud-based claims, the Superior Court

24  sustained Defendants' demurrers in part, finding that "Plaintiffs d[id] not allege 'but-for'

25  causation." *Id.* at 114–18. With respect to Plaintiffs' breach of contract and breach of implied

26  covenant of good faith and fair dealing claims, the San Francisco Superior Court sustained

27  _____

28  [1] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

United States District Court
Northern District of California

2

1   Defendants' demurrers in part, finding that "[t]here [was] no allegation of conduct outside of the

2   written invoice giving rise to an implied contract claim." *Id*. at 119–20.

3        On January 6, 2022, Plaintiffs filed a second amended complaint ("SAC") re-asserting the

4   same eight state law causes of action and adding a claim of negligence per se. *Id*. at 122 (Ex. Q,

5   Second Amended Complaint). On April 19, 2022, the San Francisco Superior Court sustained

6   Defendants' demurrer without leave to amend based on the filed rate doctrine. *Id*. at 154 (Ex. R,

7   04-19-2022 Order on Demurrers). The Superior Court's order sustaining Defendants' demurrer

8   based on the filed rate doctrine was reversed by the Court of Appeals on December 1, 2023. *Id*. at

9   168 (Ex. U, 12-01-2023 Court of Appeals Order).

10        On May 3, 2023, Plaintiffs filed the currently operative TAC. Plaintiffs' TAC alleges six

11   counts: (1) violation of California's UCL, (2) fraud, (3) breach of contract, (4) violation of CLRA,

12   (5) negligence, and (6) civil RICO violation.

13        On May 30, 2024, Defendants removed the case to this Court. *Id*. at 1.

14   **II.    LEGAL STANDARD**

15        Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

16   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

17   defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

18   granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the

19   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

20   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule

21   12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

22   on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible

23   when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

24   the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

25        Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a

26   claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity

27   the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317

28   F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how"

United States District Court
Northern District of California

3

1    of the alleged conduct, so as to provide defendants with sufficient information to defend against

2    the charge.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  However, "[m]alice, intent,

3    knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P.

4    Rule 9(b).

5         In reviewing the plausibility of a complaint, courts "accept factual allegations in the

6    complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

7    *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

8    courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

9    fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

10   2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

11        Even if the court concludes that a 12(b)(6) motion should be granted, the "court should

12   grant leave to amend even if no request to amend the pleading was made, unless it determines that

13   the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203

14   F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

15   **III.    DISCUSSION**

16        **A.    Request for Judicial Notice**

17        Before turning to the substance of Defendants' motion to dismiss, the Court addresses

18   Defendants' request for judicial notice, Dkt. No. 10, and Plaintiffs' request for judicial notice, Dkt.

19   No. 18-2.

20             **i.    Legal Standard**

21        In *Khoja v. Orexigen Therapeutics*, the Ninth Circuit discussed the judicial notice rule and

22   incorporation by reference doctrine.  *See* 899 F.3d 988 (9th Cir. 2018).  Under Federal Rule of

23   Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because

24   it … can be accurately and readily determined from sources whose accuracy cannot reasonably be

25   questioned."  Fed. R. Evid. 201(b)(2).  Accordingly, a court may take "judicial notice of matters of

26   public record," but "cannot take judicial notice of disputed facts contained in such public records."

27   *Khoja*, 899 F.3d at 999 (citation and quotations omitted).  The Ninth Circuit has clarified that if a

28   court takes judicial notice of a document, it must specify what facts it judicially noticed from the

United States District Court
Northern District of California

document. *Id.* at 999. Further, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.* As an example, the Ninth Circuit held that for a transcript of a conference call, the court may take judicial notice of the fact that there was a conference call on the specified date, but may not take judicial notice of a fact mentioned in the transcript, because the substance "is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes." *Id.* at 999–1000.

Separately, the incorporation by reference doctrine is a judicially created doctrine that allows a court to consider certain documents as though they were part of the complaint itself. *Id.* at 1002. This is to prevent plaintiffs from cherry-picking certain portions of documents that support their claims, while omitting portions that weaken their claims. *Id.* Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *Khoja*, 899 F.3d at 1002. However, "the mere mention of the existence of a document is insufficient to incorporate the contents" of a document. *Id.* at 1002. And while a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss … it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

Defendants ask the Court to take judicial notice of Exhibits A–F to the declaration of Tiffany Cheung. Dkt. No. 10 at 2. Exhibits A–F are copies of court documents filed in related cases: Exhibit A is copy of Plaintiffs' motion for consolidation filed on April 13, 2021 in San Francisco Superior Court; Exhibit B is a copy of the notice of entry of consent judgment filed in *People v. Recology, Inc.*, Case No. CGC-21-590091, in San Francisco Superior Court; Exhibit C is a copy of the deferred prosecution agreement filed in *United States v. Recology, Inc.*, Case No. 21-cr-00356-WHO, in this District; Exhibit D is a copy of the judgment entered in *United States v. Giusti*, Case No. 21-cr-00294-WHO, in this District; Exhibit E is a copy of the judgment entered in *United States v. Porter*, Case No. 22-cr-00270-WHO, in this District; and Exhibit F is a copy of the judgment entered in *United States v. Nuru*, Case No. 21-cr-00490, in this District. *Id.* Exhibits A–F are copies of publicly available court records that are not subject to reasonable dispute.

United States District Court
Northern District of California

1     Plaintiffs ask the Court to take judicial notice of Exhibits A–D to the declaration of Glen

2  Turner.  Dkt. No. 18-2 at 2.  Exhibits A and B are copies of orders from the San Francisco

3  Superior Court regarding Defendants' demurrers.  *Id*.  Exhibits C and D are copies of Plaintiffs'

4  second amended complaint and third amended complaint, respectively, filed in San Francisco

5  Superior Court. *Id*.  Exhibits A–D are publicly available court records that are not subject to

6  reasonable dispute.  Plaintiffs also ask the Court to take judicial notice of "documents incorporated

7  by reference in the TAC."  *Id*.  The TAC references three documents: (1) the criminal complaint

8  against Paul Giusti filed in Case No. 3-20-71664-MAG in this District, TAC at 223 n.3; (2) an FBI

9  press release regarding the criminal complaint against Paul Giusti, *id*. at 219 n.1; and (3) a meeting

10  agenda from a Special Meeting of the City's Refuse Collection and Disposal Rate Board, *id*. at

11  224 n.4.  All three referenced documents are either publicly available court records or publicly

12  available government records not subject to reasonable dispute.

13     The Court therefore **GRANTS** Defendants' and Plaintiffs' requests for judicial notice, Dkt.

14  Nos. 10, 18-2.  However, in keeping with *Khoja*, the Court will consider the contents of Exhibits

15  A–F to the declaration of Tiffany Cheung, Exhibits A–D to the declaration of Glen Turner, and the

16  documents referenced in the TAC but will not assume their truth.

17     **B.     Motion to Dismiss**

18     Defendants argue that Plaintiffs' claims fail as a matter of law.  First, Defendants argue

19  that Plaintiffs' UCL, CLRA, and fraud claims should be dismissed because "Plaintiffs [] do not

20  allege facts to plead reliance."  Mot. at 11.  Defendants also argue that Plaintiffs' breach of

21  contract claim fails because Plaintiffs "do not allege any contract between [Defendants] and

22  members of the putative class."  *Id*.  Next, Defendants argue that Plaintiffs' negligence claim is

23  barred by the statute of limitations.  *Id*. Defendants argue in the alternative that the negligence

24  claim fails because "Plaintiffs have not alleged that [Defendants] breached any duty to []

25  Plaintiffs."  *Id*.  Finally, Defendants argue that Plaintiffs' RICO claim should be dismissed

26  because Plaintiffs fail to plead the existence of an enterprise, a pattern of racketeering activity, a

27  causal link between the alleged racketeering activity and Plaintiffs' alleged injury, or an effect on

28  interstate commerce.  *Id*.

### i.    UCL, CLRA, and Fraud Claims

Plaintiffs accuse Defendants of (1) violating California's UCL under the fraudulent, unlawful, and unfair prongs, TAC ¶¶ 144–54; (2) violating California's CLRA, *id*. ¶¶ 191–211; and (3) common law fraud, *id*. ¶¶ 155–80.

The Court first notes that Plaintiffs' UCL, CLRA, and fraud claims are subject to Rule 9(b)'s heightened pleading standard.  Plaintiffs allege that Defendants committed unlawful, unfair, and fraudulent business practices by "conceal[ing] [] information necessary to properly set garbage collection rates" and "brib[ing] Nuru . . . to assist in concealing the information in order to pass improper garbage collection rate increases, which were passed along to unsuspecting City customers."  TAC ¶ 147; *see also id*. ¶ 199 ("But for [Defendants'] statement, and [Defendants'] concealment of information concerning just and proper rates, Plaintiffs would have been informed of what would constitute proper collection rates and been afforded an opportunity to object to improper rates.").  In essence, Plaintiffs accuse Defendants of misrepresenting that its waste collection rates were "fixed by a 'just and reasonable process'" and concealing its alleged corruption and bribery.  *See* TAC ¶¶ 144–54, 191–211.  Because Plaintiffs' UCL and CLRA claims are "rooted in a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of each claim," these claims "must satisfy the particularity requirement of Rule 9(b)."  *Beecher v. Google N. Am. Inc.*, No. 18-CV-00753-BLF, 2018 WL 4904914, at *1 (N.D. Cal. Oct. 9, 2018).

### a.    UCL and CLRA Claims

"In California, the UCL broadly proscribes business practices that are unlawful, unfair, or fraudulent."  *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *4 (N.D. Cal. Jan. 28, 2011) (citing See Cal. Bus. & Prof.Code § 17200).  "Each prong under the statute constitutes a separate and distinct theory of liability."  *Id*. (quotation and citation omitted).  The CLRA similarly prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.

Where a plaintiff brings a UCL or CLRA claim based on the defendant's alleged misrepresentations or omissions, the plaintiff must plead "actual reliance on the defendant's

misrepresentations or omissions." *Baba*, 2011 WL 317650, at \*4; *see also Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021) ("[B]ecause Plaintiffs' claims under the UCL and the CLRA sound in fraud, they must allege specific facts showing that they relied on the alleged misrepresentations or omissions."); *Hodges v. Apple Inc.*, No. 13-CV-01128-WHO, 2013 WL 6698762, at \*8 (N.D. Cal. Dec. 19, 2013), *aff'd*, 640 F. App'x 687 (9th Cir. 2016) (dismissing CLRA claim based on fraudulent omission where plaintiff "fail[ed] to plead with particularity that he actually relied upon any omission by Apple and would have proceeded differently but for the alleged omission"). "The reliance requirement applies not only to UCL claims asserted under the fraud prong of section 17200 but also to claims asserted under the unlawful and unfair prongs where those claims are predicated on misrepresentation and deception." *Watkins*, 550 F. Supp. 3d at 834; *see also Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-WHO, 2014 WL 1028881, at \*5 (N.D. Cal. Mar. 14, 2014) ("A plaintiff bringing a claim under the unlawful prong of the UCL must similarly plead actual reliance to establish standing if the predicate unlawful act is based on misrepresentation or fraud."); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) ("[C]ourts in this [D]istrict have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive.").

Plaintiffs' UCL claim accuses Defendants of "concealing information necessary to properly set garbage collection rates and bribing officials of the City and County of San Francisco." TAC ¶ 148. Plaintiffs' CLRA claim similarly alleges that "[Defendants] believed that ratepayers would realize that the billing communication, combined with the 1932 Ordinance, constituted a representation that the billing rates were derived by a 'just and reasonable' process" but "[t]his implied statement was false, as the ratemaking process was tainted with fraudulent concealment, corruption and bribery, producing an unfair result and artificially high waste collection rates." *Id*. ¶¶ 196–97; *see also id*. ¶¶ 193 ("[Defendants] intentionally failed to disclose to Plaintiffs that [Defendants] knew that the ratemaking process was corrupted and unfair and that [Defendants] w[ere] purchasing higher waste collection rates by concealing necessary information

1   and bribing the individual responsible for approving rates."), 198 ("This implied statement [that

2   billing rates were derived by a just and reasonable process] was false . . . ."), 201 ("Recology

3   intentionally promulgated billing statements containing language that, combined with the 1932

4   ordinance, implied that rates were 'just and reasonable' and set by an orderly and legal process.").

5   Plaintiffs must therefore plead actual reliance on Defendants' alleged misrepresentations and

6   omissions.

7          Defendants argue that Plaintiffs have failed to plead actual reliance because they do not

8   allege that they "read any portion of their billing statements" or "read the phrase 'subject to the

9   same fixed rates pursuant to initiative ordinance' and interpreted it to mean set through a 'just and

10  reasonable' process pursuant to the 1932 Ordinance." Mot. at 17. Plaintiffs suggest they do not

11  need to plead actual reliance on the alleged misrepresentation because the reliance element is

12  satisfied if "the concealed information would have been a substantial factor in a plaintiff's

13  decision whether or not to pay his or her bill without protest or complaint." Opp. at 10. The Court

14  agrees with Defendants. Without pleading actual reliance on the alleged misstatement, Plaintiffs'

15  UCL and CLRA claims fail.

16         "Courts in this [D]istrict have consistently held that plaintiffs in misrepresentation cases

17  must allege that they actually read the challenged representations to state a claim." *Beecher*, 2018

18  WL 4904914, at *2. Here, Plaintiffs do not allege that they read the statement that waste

19  collection services were "subject to the same fixed rate pursuant to initiative ordinance." The

20  TAC does not even generally allege that Plaintiffs read or reviewed any of Defendants' billing

21  communications. Plaintiffs have therefore failed to plead actual reliance on Defendants' purported

22  misrepresentations. *See Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 1579693, at *8

23  (N.D. Cal. Apr. 19, 2016) ("Given that [p]laintiffs have failed to plead that they viewed or heard

24  any representations or omissions by Apple or that [p]laintiffs would have been aware of any

25  omitted information had it been disclosed, the [c]ourt concludes that [p]laintiffs have failed to

26  plead actual reliance."); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1048–49 (N.D. Cal. 2014)

27  ("Nowhere in the [c]omplaint do [p]laintiffs allege that they saw, read, or relied on any

28  representations by [defendant] . . . . As such the Court finds that [p]laintiffs have failed to

United States District Court
Northern District of California

9

1    adequately plead actual reliance as required to establish standing under the CLRA and UCL.");

2    *Beecher*, 2018 WL 4904914, at \*2 ("Nowhere in his FAC does [plaintiff] allege that he viewed

3    Google's alleged misrepresentations, much less that he relied on those misstatements. This failure

4    is fatal to his claims."); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114 (N.D. Cal.

5    2016) (finding plaintiff did not plead actual reliance where plaintiff "failed to allege what she saw,

6    what she believed as a result, [or] how knowledge would impact her behavior").

7         Having found Plaintiffs' UCL claim fails to plead actual reliance on a misrepresentation or

8    omission, the Court **DISMISSES** Plaintiffs' UCL claim under the fraud, unlawful, and unfair

9    prongs.[2]

10             b.   Fraud Claim

11        "The elements of a fraud claim in California are '(1) misrepresentation (false

12    representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to

13    defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.'" *Luna v. Gen.*

14    *Motors LLC*, No. 24-CV-02753-RS, 2024 WL 3173287, at \*2 (N.D. Cal. June 24, 2024) (citation

15    omitted).

16        Plaintiffs bring a claim for fraud based on Defendants' alleged intentional

17    misrepresentation, fraudulent concealment, and intentional indirect misrepresentation. TAC

18    ¶¶ 155–80. These are the same grounds on which Plaintiffs bring their UCL and CLRA claims.

19    Like Plaintiffs' UCL and CLRA claims, Plaintiffs' fraud claim "must be pled with particularity."

20    *Missud v. City & Cnty. of San Francisco*, No. 15-CV-05596-JCS, 2017 WL 1064984, at \*17 (N.D.

21    Cal. Mar. 21, 2017). As explained above, *see supra* Section III.B.i.a, Plaintiffs have not pled

22    actual reliance on Defendants' alleged misrepresentations or omissions. The Court therefore

23    **DISMISSES** Plaintiffs' fraud claim.

24        **ii.   Count III (Breach of Contract)**

25        "Under California law, a plaintiff states a claim for breach of contract where it alleges: '(1)

26

27    _____

      [2] Plaintiffs argue that their unlawful UCL claim survives independently because Defendants'
      "bribery of San Francisco officials was unlawful pursuant to San Francisco City and Government

28    Code § 3.216" and "[b]ribery [and money laundering] violate[] federal law." Opp. at 16.
      However, the UCL claim, as currently pled, does not allege that Defendants violated § 3.216.

United States District Court
Northern District of California

1   the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

2   defendant's breach, and (4) the resulting damages to the plaintiff.'" *Diversified Cap. Invs., Inc. v.*

3   *Sprint Commc'ns, Inc.*, No. 15-CV-03796-HSG, 2016 WL 2988864, at *5 (N.D. Cal. May 24,

4   2016). To satisfy the first element—existence of a contract—"a party may plead a written contract

5   either by its terms—set out verbatim in the complaint or a copy of the contract attached to the

6   complaint and incorporated therein by reference—or by its legal effect." *Croshal v. Aurora Bank,*

7   *F.S.B.*, No. C 13-05435 SBA, 2014 WL 2796529, at *4 (N.D. Cal. June 19, 2014) (quotations and

8   citation omitted). "Attaching a copy of the contract is not required so long as the plaintiff sets

9   forth the material terms verbatim or pleads the contract according to its legal effect." *Shruhan v.*

10   *Apple Inc.*, No. 22-CV-05498-EJD, 2024 WL 1589478, at *3 (N.D. Cal. Apr. 10, 2024).

11         Plaintiffs breach of contract claim alleges "Recology and its ratepayers entered into an

12   implied and/or express contract" with terms that "Recology would perform waste collection for

13   the ratepayers and the ratepayers would pay the just and reasonable rates set pursuant to

14   ordinance." TAC ¶ 182. According to Plaintiffs, "[b]y paying the rates . . . Plaintiffs proved

15   through their actions that they understood, entered into, and abided by the contract" and that "[b]y

16   collecting waste, accepting payments from ratepayers of the sums Recology communicated as

17   having been set by ordinance, and communicating to ratepayers that the terms were set by

18   ordinance, Recology manifested that it understood, entered into, and abided by the contract." *Id*.

19   ¶¶ 185–86. Plaintiffs further allege that Defendants breached the contract by not performing waste

20   collection for a "just and reasonable rate[,]" and Plaintiffs were harmed by being "forced to pay

21   inflated waste collection bills through the pertinent period." *Id.* ¶¶ 187–89. Defendants argue that

22   Plaintiffs have failed to "plead the existence of any contract," which is "fatal to [Plaintiffs']

23   claim." Mot. at 22.

24         The TAC does not attach any written contract, and therefore whether Plaintiffs have

25   sufficiently pled the existence of a contract turns on whether the TAC sets forth the material terms

26   verbatim or pleads the contract according to its legal effect. "Pleading the legal effect of a

27   contract is sufficient where the plaintiff supports its assertions with facts and testimonial evidence

28   pointing to the plausible existence of contractual terms that would give rise to the asserted legal

United States District Court
Northern District of California

11

United States District Court
Northern District of California

effect." *Shruhan*, 2024 WL 1589478, at *3.  Here, the TAC does not recite the terms of the contract verbatim but instead provides a single sentence that makes unsubstantiated characterizations of the alleged contract terms.  *See* TAC ¶ 182 ("[The contract's] terms were that Recology would perform waste collection for the ratepayers and the ratepayers would pay the just and reasonable rates set pursuant to ordinance.").  Plaintiffs' unsupported characterization of the alleged contract's terms is not sufficient to plead the existence of a contract.  *See Dorian v. Cmty. Loan Servicing, LLC*, No. 22-CV-04372-DMR, 2022 WL 7620460, at *6 (N.D. Cal. Oct. 13, 2022) ("A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint.").[3] Accordingly, the Court **DISMISSES** Plaintiffs' breach of contract claim.[4]

### iii.    Count V (Negligence)

Defendants make two arguments in seeking dismissal of Plaintiffs' negligence claim: (1) the claim is time-barred by the two-year statute of limitations, and (2) Plaintiffs have not alleged that Defendants had a duty to Plaintiffs or that Defendants breached any such duty.  Mot. at 23.

### a.    Statute of Limitations

Plaintiffs' negligence claim has a statute of limitations of two years.  *See* Cal. Civ. Code § 335.1.  Plaintiffs argue that their negligence claim is not time-barred because "it is based on the same general set of facts as the rest of the claim" and "therefore relates back to prior complaints." Opp. at 18.  The Court agrees with Plaintiffs.

Federal Rule of Civil Procedure 15 provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."  Fed. R.

---

[3] To the extent Plaintiffs suggest that the bills themselves constitute the relevant contract, under California law "[t]he prevailing rule is that an invoice, standing along, is not a contract."  *Hart v. Charter Commc'ns, Inc.*, No. 8:17-CV-00556-SB-RAO, 2023 WL 3914285, at *8 (C.D. Cal. May 5, 2023) (quoting *India Paint & Lacquer Co. v. United Steel Prod. Corp.*, 123 Cal. App. 2d 597, 607 (1954)).

[4] Defendants also argue that Plaintiffs are not entitled to any recovery "to the extent [their] alleged contract damages are based upon the same elevated fees that were the subject of Recology's settlement with the City . . . ."  Mot. at 23.  Whether the settlement between the City and Recology precludes Plaintiffs' request for damages is a fact-intensive question not appropriate for resolution at the motion to dismiss stage.

1    Civ. P. 15(c)(1)(B).  Here, Plaintiffs' negligence claim is based on Defendants' alleged "pattern of

2    making direct and indirect monetary and in-kind gifts to City officers and employees with the

3    intent to curry favor and influence governmental decisions in violation of Section 3.216(a)."  TAC

4    ¶ 214; *see also id.* ¶¶ 215–18 (allegations of money laundering and other "unlawful gifts").  This

5    is the same set of facts that forms the basis for the claims in Plaintiffs' prior complaints.

6    Moreover, Plaintiffs' SAC alleged negligence per se based on the same set of facts underlying the

7    TAC's negligence claim, Dkt. No. 1 at 149–50, and Defendants do not contend that the negligence

8    per se claim was untimely.  The Court finds that negligence claim set forth in the TAC "relies on

9    the same general set of facts" as those alleged in three prior complaints and relates back to at least

10   the SAC.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Res. Dev. Servs., Inc.*, No. C 10-01324

11   RS, 2012 WL 12920615, at *2 (N.D. Cal. Apr. 16, 2012) (quotation and citation omitted).

12   Accordingly, Plaintiffs' negligence claim is not time-barred.

13                   b.   Duty of Care and Breach of Duty

14         "To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed

15   the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately

16   caused the plaintiff's damages or injuries."  *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 906 (N.D.

17   Cal. 2024).  "Duty to use due care towards the party who brings suit is considered the threshold

18   requirement for all negligence claims."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Res. Dev.*

19   *Servs., Inc.*, No. C 10-01324 RS, 2011 WL 13153239, at *3 (N.D. Cal. Dec. 7, 2011).  "The

20   existence of a duty is a question of law and thus is often suited to a Rule 12(b)(6) disposition."

21   *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-CV-02778-TSH, 2019 WL

22   3503109, at *5 (N.D. Cal. Aug. 1, 2019) (quotation and citation omitted).

23         Plaintiffs allege that "[Defendants] negligently failed to prevent [their] officers and

24   employees from violating [§ 3.216(a)[,]" which states that "[n]o person shall offer or make, and no

25   officer or employee shall accept, any gift with the intent that the City officer or employee will be

26   influenced thereby in the performance of any official act."  TAC ¶¶ 219, 213.  Defendants argue

27   that Plaintiffs have not plausibly alleged that Defendants had a duty to prevent their officers and

28   employees from violating § 3.216, and Defendants "are not liable for failing to prevent another

1    from causing harm." Mot. at 24 ("Plaintiffs merely point to the criminal indictments of certain []

2    employees and ask this Court to infer that, but for [Defendants'] own negligence, this malfeasance

3    could not have occurred.").

4        Plaintiffs' negligence claim does not allege what duty (if any) Defendants owed to

5    Plaintiffs. TAC ¶¶ 212–23. Plaintiffs' broad allegation that Defendants "negligently failed to

6    prevent [their] officers and employees from violating Section 3.216(a)" alone is not sufficient to

7    plead what duty Defendants owed Plaintiffs or how Defendants' alleged failure to prevent their

8    officers and employees from violating § 3.216 constitutes a breach of any duty. *See Williams v.*

9    *J.P. Morgan Chase Bank, N.A.*, 704 F. Supp. 3d 1020, 1025 (N.D. Cal. 2023) ("Plaintiffs posit, as

10   an unadorned legal conclusion, that they were owed a 'duty of due care' . . . . Consequently,

11   plaintiffs did not plausibly allege that [defendant] owed them a duty of care that could give rise to

12   a negligence claim."). In their opposition brief, Plaintiffs argue that Defendants "owe[d] a duty to

13   Plaintiffs to act as a reasonable person." Opp. at 18. Plaintiffs do not allege such a duty in the

14   TAC. Moreover, even if Defendants had a duty to act as a reasonable person, the TAC does not

15   allege how they breached that duty.

16       Defendants alternatively argue that "[t]o the extent Plaintiffs seek to bring a claim based on

17   allegedly negligent hiring practices or a failure to adequately train or supervise, the TAC has not

18   pled any facts to support such a theory." *Id.* Plaintiffs do not address this argument, but to the

19   extent Plaintiffs' negligence claim is based on Defendants' allegedly negligent hiring practices or

20   an alleged failure to adequately train or supervise, the Court agrees with Defendants. Plaintiffs

21   have not set forth any factual allegations "related to the hiring, training, or supervision of either

22   Giusti or Porter" or "regarding what training was provided to employees or executives generally

23   . . . ." Mot. at 24. Accordingly, the Court **DISMISSES** Plaintiff's negligence claim.

24       **iv.    Count VI (Civil RICO Violations)**

25       Plaintiffs bring a RICO claim under § 1962(c). *See* TAC ¶ 13. To a plead a RICO

26   violation under § 1962(c), "a plaintiff must allege: '(1) conduct (2) of an enterprise (3) through a

27   pattern (4) of racketeering activity.'" *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 936–37

28   (N.D. Cal. 2013) (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc )).

"Rule 9(b)'s requirement that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity applies to civil RICO fraud claims." *Id*. (quotation and citation omitted). "In the context of RICO, Rule 9(b) requires that a plaintiff detail[] with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Dorsey v. Tetra Tech EC, Inc.*, No. 18-CV-03623-HSG, 2019 WL 2603239, at *2 (N.D. Cal. June 25, 2019) (quotation and citation omitted). "A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *Id*.

Defendants argue that Plaintiffs' RICO claim is deficient because Plaintiffs have not sufficiently alleged that (1) "[Defendants] conducted or participated in the conduct of any enterprise" or (2) "engaged in any pattern of racketeering activity" and (3) Plaintiffs have not pled "the requisite effect on interstate commerce" as "the activity alleged in the TAC . . . never reached outside the San Francisco city limits . . . ." Mot. at 11.[5]

### a.  Existence of an Enterprise

A RICO "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "An enterprise that is not a legal entity is commonly known as an 'association-in-fact' enterprise." *Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011, 1026 (N.D. Cal. 2020). "To plead an association-in-fact enterprise, a plaintiff must allege: (1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that the associates function as a continuing unit." *Id*. "It is not necessary to show that the enterprise has some function wholly unrelated to the racketeering activity." *Jane Doe I v. Reddy*, No. C 02-05570 WHA, 2003 WL 23893010, at *3 (N.D. Cal. Aug.

---

[5] Defendants also argue that Plaintiffs "have not alleged any causal link between the alleged criminal acts at the center of their RICO claims and any injuries they have suffered." Mot. at 30. Plaintiffs do not rebut Defendants' argument, and Defendants argue that "Plaintiffs have conceded that there is no causal link between racketeering activity and any alleged injury by failing to address" this argument. Dkt. No. 22 at 13 n.7. Having found Plaintiffs' civil RICO claim does not plead a pattern of racketeering activity or an effect on interstate commerce, *see infra* Sections III.B.iv.b–c, the Court need not address this issue.

15

United States District Court
Northern District of California

4, 2003). "Rather, it is sufficient to show that the organization has an existence beyond that which is merely necessary to commit the predicate acts of racketeering." *Id.* (citation omitted).

Defendants challenge Plaintiffs' allegations of an enterprise on three grounds: (1) Plaintiffs' allegations do not allege a common purpose but two separate purposes: "for Giusti, a desire to influence the City's policymaking, and for Nuru, the goal of materially benefitting from his position of authority;" (2) "Plaintiffs allege no communication between [Defendants] and the other purported participants expressing or demonstrating any common purpose" or "any organizational 'framework' between [Defendants] and its employees, on the one hand, and Nuru and the non-profits, on the other"; and (3) "the TAC pleads no factual allegations showing [Defendants] participation in the 'operation or management' of the alleged enterprise." Mot. at 25–27. These arguments are not persuasive.

The TAC alleges that Defendants, Mr. Giusti, Mr. Nuru, the Lefty O'Doul Foundation for Kids, and Nick Bovis (the Director of the Lefty O'Doul Foundation for Kids) were members of the alleged enterprise, and that the alleged enterprise acted "for the purpose of facilitating the operation of, performing, and preventing the detection of, a long-running pattern of bribes of City of San Francisco [] officials, which bribes allowed [Defendants] to unlawfully and improperly obtain elevated rates for waste collection in San Francisco." TAC ¶¶ 226, 230. That Mr. Giusti and Mr. Nuru may have had personal motivations for participating in the alleged enterprise does not disprove the allegation that the enterprise had the common goal of "performing[] and preventing detection of[] a long-running pattern of bribes" of City officials, *id.* ¶ 230. *See MH Pillars Ltd. v. Realini*, No. 15-CV-01383-PJH, 2018 WL 1184847, at *5 (N.D. Cal. Mar. 7, 2018) (finding defendants pled an associate-in-fact enterprise where defendants alleged "that core members of that larger enterprise . . . functioned as a stable unit to achieve their common purpose: facilitating illegal financial transactions"). Additionally, the TAC sets forth several pages of factual allegations regarding communications between and conduct involving members of the alleged enterprise. *See* TAC ¶¶ 41–91. These allegations are sufficient to plead an organizational framework between members of the enterprise and Defendants' participation in the operation of the alleged enterprise. *See N. Star Gas Co. v. Pac. Gas & Elec. Co.*, No. 15-CV-02575-HSG,

16

1   2016 WL 5358590, at *19 (N.D. Cal. Sept. 26, 2016) ("[B]ecause [p]laintiff alleges that the

2   [i]ndividual [d]efendants have a common purpose, a continuing course of conduct, and

3   coordination among them, these requirements of an association-in-fact are met.").[6]  The Court

4   finds Plaintiffs have adequately plead an association-in-fact enterprise.

5                              b.  Pattern of Racketeering Activity

6           Defendants argue that Plaintiffs have not alleged facts "demonstrating any underlying

7   predicate act or pattern of racketeering activity."  Mot. at 28.  "Racketeering activity" (i.e. a

8   predicate act) includes any act indictable under one of several provisions of Title 18 of the United

9   States Code.  *See Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 316 (9th Cir. 1990); *see also* 18

10  U.S.C. § 1961.  "[A] pattern of racketeering activity exists when a person commits or aids in two

11  or more predicate acts that are sufficiently connected to pose a threat of continued criminal

12  activity."  *Jane Doe I v. Reddy*, No. C 02-05570 WHA, 2003 WL 23893010, at *2 (N.D. Cal. Aug.

13  4, 2003).  "The threat of continuity may be established where the predicate acts themselves

14  include a threat of future criminal actions, where an alleged perpetrator of the predicate acts is

15  engaged in an ongoing criminal enterprise, or where the predicate acts are the enterprise's regular

16  way of doing business."  *Pac. Software Consulting, Inc. v. SystemCentrix Inc.*, No.

17  SACV101443DOCEX, 2011 WL 13227832, at *4 (C.D. Cal. Apr. 11, 2011).  "If the predicate

18  acts are isolated or sporadic incidents, they do not amount to a pattern of racketeering activity."

19  *Id*.

20          Plaintiffs allege that Defendants engaged in the predicate acts of bribery (18 U.S.C.

21  § 666(a)(2)), concealment money laundering (18 U.S.C. § 1956(a)(1)(B)(i)), honest services wire

22  fraud (18 U.S.C. §§ 1343, 1346), and corruption of a public official (San Francisco Campaign and

23  Government § 3.216).  TAC ¶ 224.  As an initial matter, corruption of a public official under

24

25  _____

26  [6] To the extent Defendants argue Defendants cannot be held liable for Mr. Giusti's actions, *see*
    Mot. at 27, Defendants are incorrect.  *See N. Star Gas Co. v. Pac. Gas & Elec. Co.*, No. 15-CV-
    02575-HSG, 2017 WL 3968495, at *2 (N.D. Cal. Sept. 7, 2017) ("Under the doctrine of

27  respondeat superior, an employer may be vicariously liable for its employee's RICO torts where:
    (1) the employer is distinct from the enterprise; (2) the employer benefitted from its employee's

28  RICO violation"; and (3) the employee's acts were committed within the course and scope of her
    employment . . . .").

United States District Court
Northern District of California

§ 3.216 does not constitute a predicate act because it is not a felony. *See* 18 U.S.C. § 1961(1)(B). But more importantly, the TAC lacks factual allegations sufficient to plausibly state claims for bribery under § 666(a)(2), concealment money laundering under § 1956(a)(1)(B)(i), or honest services wire fraud under §§ 1343 and 1346.

To state a claim for wire fraud under § 1343, a plaintiff must allege "(a) the formation of a scheme to defraud, (b) the use of interstate wires in furtherance of that scheme, and (c) the specific intent to defraud." *Edwards v. Leaders in Cmty. Alternatives, Inc.*, No. C 18-04609 WHA, 2018 WL 6591449, at *7 (N.D. Cal. Dec. 14, 2018), *aff'd*, 850 F. App'x 503 (9th Cir. 2021). The TAC does not set forth any facts showing that Defendants "use[d] interstate wires" in furtherance of a scheme to defraud. Although the TAC alleges that Defendants wired money to other members of the purported enterprise, Plaintiffs do not allege facts suggesting that the wires were "interstate wires." TAC ¶ 75. Plaintiffs seem to rely on the criminal charges against Mr. Nuru and Mr. Porter to allege that Defendants engaged in wire fraud, but as currently pled, the fact that Mr. Nuru and Mr. Porter were charged with wire fraud does not suggest that Defendants themselves engaged in wire fraud under §§ 1343 or 1346. *See id.* ¶¶ 121 ("Nuru was charged by Criminal Complaint with Honest Services Wire Fraud", 123 ("Recology executive John Francis Porter pled guilty to conspiring to commit honest services mail and wire fraud"); Dkt. No. 9-5 (judgment in *United States v. Giusti*, No. 21-cr-00294, reflecting guilty plea to conspiracy to bribe a local official and commit honest services fraud under 18 U.S.C. § 371); Dkt. No. 9-6 (judgment in *United States v. Porter*, No. 22-cr-00270, reflecting guilty plea to conspiracy to commit honest services wire and mail fraud under § 1349); Dkt. No. 9-7 (judgment in *United States v. Nuru*, No. 21-cr-00490, reflecting guilty plea to honest services wire fraud under § 1343). Plaintiffs' allegations regarding the predicate acts of money laundering and bribery similarly fail, as the TAC does not provide even a formulaic recitation of elements for these claims. *See* TAC ¶¶ 121–24, 224–48.

The TAC sets forth a single conclusory sentence alleging that Defendants "committed and/or engaged in acts denominated as unlawful predicate offenses pursuant to the RICO Act . . . ." TAC ¶ 224. That is not enough. *Cobb v. JPMorgan Chase Bank, N.A.*, No. 13-CV-01955-JSW, 2013 WL 6201414, at *13 (N.D. Cal. Nov. 27, 2013) (finding plaintiff had not alleged facts

showing defendants engaged in bribery, extortion, obstruction of justice, mail and wire fraud, or money laundering as predicate acts to support the civil RICO claim); *RJ v. Cigna Health & Life Ins. Co.*, 625 F. Supp. 3d 951, 965 (N.D. Cal. 2022) (finding plaintiff failed to plead a predicate act where plaintiff did not allege facts to plausibly allege first and third elements of money laundering under § 1956); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 613 (N.D. Cal. 2020) (finding plaintiff failed to plead wire and mail fraud predicate act claims as to certain defendants because plaintiff did not allege those defendants had the specific intent to defraud).

Moreover, "[w]here RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant." *Vaughan v. Wardhaugh*, No. 23-CV-02879-RFL, 2024 WL 2853972, at *2 (N.D. Cal. May 10, 2024). Here, Plaintiffs allege that "the group of Defendants," *id.*, committed the alleged predicate acts, TAC ¶ 224. But these allegations "lump Defendants together without identifying which Defendants are alleged to have committed which crimes on what occasions" and fail to provide Defendants "adequate notice to respond individually as to the alleged predicate acts." *Vaughan*, 2024 WL 2853972, at *2; *see also Muldoon v. DePuy Orthopaedics, Inc.*, No. 15-CV-02723-PJH, 2024 WL 3522204, at *13 (N.D. Cal. July 23, 2024) (finding plaintiff failed to plead predicate acts as plaintiffs did not "allege which particular defendant did which act"). Plaintiffs have therefore failed to plead a pattern of racketeering activity.

### c.  Effect on Interstate Commerce

The RICO Act requires "requires that the enterprise . . . affect interstate commerce." *Lopez v. Cher Koon Teo*, No. CV0903688RGKCTX, 2010 WL 11515370, at *5 (C.D. Cal. Feb. 24, 2010). "[T]he plaintiff[] must show at least a 'minimal' connection with interstate commerce, and must show more than the fact that an alleged RICO enterprise has purchased goods and supplies from out of state." *Belczak v. Shute*, No. SACV090305AGANX, 2009 WL 10674167, at *1 (C.D. Cal. June 29, 2009) (citation omitted). "That the predicate acts might have involved the use of instrumentalities of interstate commerce does not mean that the RICO enterprise that [d]efendants acquired through the predicate acts affected interstate commerce." *Lopez*, 2010 WL

1    11515370, at *5.

2        The TAC alleges that the enterprise affected interstate commerce in three ways: (1) "[t]he

3    illegally obtained profits went to Recology, a multi-state entity which operates waste collection

4    services in Oregon and Washington as well as in California, and therefore flowed across state lines

5    to related entities and affected interstate commerce thereby"; (2) "[t]he racketeering activity . . .

6    included numerous email communications using the internet, as well as numerous wire transfers";

7    and (3) "[t]he racketeering activity also affected interstate commerce by wrongfully depriving

8    Plaintiffs and the class of $120 million or more, some significant percentage of which would

9    otherwise have been spent in interstate commerce."  TAC ¶¶ 239–41.  Defendants argue that these

10   allegations do not sufficiently allege an effect on interstate commerce.  The Court agrees.

11       First, the allegation that illegally obtained profits "flowed across state lines and affected

12   interstate commerce" is nothing more than conclusory.  That Defendants provide waste collection

13   services in Oregon, Washington, and California does not suggest that any illegally obtained profits

14   would necessarily have "flowed across state lines."  And Plaintiffs do not provide any authority

15   suggesting otherwise.  Second, the alleged enterprise's use of the internet is clearly insufficient to

16   plead an effect on interstate commerce.  *See Lopez*, 2010 WL 11515370, at *5 (rejecting plaintiff's

17   argument that allegations that "[d]efendants used instrumentalities of interstate commerce, such as

18   telephone, e-mail, and international travel, to reach out to him in United States in order to induce

19   him to enter the join-venture" was sufficient to state an effect on interstate commerce).  Finally,

20   Plaintiffs' allegation that "some significant percentage" of the $120 million "would [] have been

21   spent in interstate commerce" is nothing more than bald speculation.

22       Plaintiffs' RICO claim is based entirely on conduct that occurred in California.  The

23   alleged enterprise consists of Defendants, Mr. Giusti, Mr. Nuru, Mr. Bovis, and the Lefty O'Doul

24   Foundation for Kids—all of which appear to be California residents or California entities—and

25   Plaintiffs do not allege that the enterprise took any action outside of California.  *See Am.*

26   *Residential Hondings, LLC v. JTB Invs.*, LLC, No. 20-CV-0483 W (MSB), 2020 WL 7625102, at

27   *5 (S.D. Cal. Dec. 22, 2020) ("Here, the RICO causes of action are based on the recording of

28   fraudulent liens against the Property in San Diego. The liens were all recorded in San Diego with

the San Diego County Recorder. These allegations establish that the alleged RICO enterprise's activity took place entirely in San Diego and the enterprise was not engaged in interstate commerce."); *Hamana v. Kholi*, No. 10CV1630 BTM BGS, 2011 WL 5077614, at *3 (S.D. Cal. Oct. 25, 2011) ("Plaintiff's more specific allegations relate to illegal loans made in California, collection of unlawful debt in California, and foreclosure of property in California. Plaintiff does not plead how any of these intrastate acts affect interstate commerce or cite to any case law that states that these acts affect interstate commerce as a matter of law."); *Belczak*, 2009 WL 10674167, at *2 (finding plaintiff did not plead an effect on interstate commerce where plaintiff alleged that the enterprise's activity "will impact the FDIC insurance, that the sale of condominiums can affect out-of-state buyers moving to California, and that the condominium project also affects contractors and laborers who move to California from out of state to find work" and noting that "these potential effects on interstate commerce constitute exactly that sort of incidental effect on interstate commerce which does not warrant federal jurisdiction").  Plaintiffs have therefore failed to allege an effect on interstate commerce.

The Court accordingly **DISMISSES** Plaintiffs' RICO claim.

## IV.    CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss.  Dkt. No. 9.  Any amended complaint shall be filed within 21 days of the date of this Order.

The Court further **SETS** a case management conference on April 8, 2025, at 2:00 p.m. The conference will be held by Public Zoom Webinar.  All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.  The parties are not required to submit a case management statement but should be prepared to discuss how to move this case forward expeditiously.

//

//

//

1    **IT IS SO ORDERED.**

2    Dated:    3/28/2025

3

4    HAYWOOD S. GILLIAM, JR.
     United States District Judge